GAJARSA, Circuit Judge,
dissenting.
I join the majority opinion with respect to the jurisdictional issues, but I respectfully dissent from the majority’s use of judicial estoppel. Under the doctrine of judicial estoppel, a court “prevents a party who prevails on one ground in a lawsuit from then repudiating that ground in order to prevail in another lawsuit.” Lampi Corp. v. Am. Power Prods., Inc., 228 F.3d 1365, 1377 (Fed.Cir.2000). We have applied judicial estoppel “to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent *1358 judicial proceeding.” Id. Courts invoke judicial estoppel to guard against the “ ‘risk of inconsistent court determinations,’ ” thereby “ ‘protecting] the integrity of the judicial process.’ ” New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 (5th Cir.1991) and Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir.1982)). But judicial estoppel no longer serves its purpose when a party has failed to persuade a court or agency to adopt its position and a court faces no risk of reaching an inconsistent determination. With an appeal pending, the risk of reaching inconsistent determinations has yet to materialize. In short, a party has yet to successfully persuade a court or agency to adopt its position for the purposes of judicial estoppel when a decision is pending appeal and the appeal relates directly to the party’s original legal position.
In this case, Heveafíl, USA, Inc. (He-veafil) has appealed the Department of Commerce’s (Commerce) determination to revoke its antidumping duty order as of October 1, 2003. The Court of International Trade (CIT) stayed Heveafil’s appeal pending the result of this case. Because CIT could reverse Commerce’s determination and hold that the anti-dumping duty order should be revoked as of October 1, 1995, the Trustees in Bankruptcy of North American Rubber Thread Co.’s (NART) current position may be completely consistent with CIT’s determination. The majority avoids addressing this difficult legal issue by ignoring the consequences of CIT reversing the revocation’s effective date. With the pending appeal in mind, the possibility that NART’s earlier position persuades CIT, instead of its current position, is an insufficient reason to apply judicial estoppel. Although no federal court of appeals has addressed this issue, the Supreme Court’s reasoning in New Hampshire v. Maine suggests that judicial estoppel is not appropriate here.
In New Hampshire, the Court enumerated three non-exclusive factors to consider in applying judicial estoppel. “First, a party’s later position must be clearly inconsistent with its earlier position.” Id. at 750, 121 S.Ct. 1808 (internal quotation marks omitted). “Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create ‘the perception that either the first or the second court was misled.’ ” Id. (quoting Edwards, 690 F.2d at 598). Third, courts consider “whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.” Id. at 751, 121 S.Ct. 1808. The second factor relates directly to the purpose of judicial estoppel and is at issue here.
The Court’s explanation of the second factor demonstrates how reversal on appeal can make judicial estoppel inappropriate. The Court explained, “Absent success in a prior proceeding, a party’s later inconsistent position introduces no ‘risk of inconsistent court determinations,’ and thus poses little threat to judicial integrity.” Id. at 750-51, 121 S.Ct. 1808 (quoting C.I.T. Constr. Inc., 944 F.2d at 259). In theory, the purpose of judicial estoppel is “ ‘to protect the integrity of the judicial process,’ by ‘prohibiting parties from deliberately changing positions according to the exigencies of the moment.’ ” Id. at 749-50, 121 S.Ct. 1808 (quoting Edwards, 690 F.2d at 598 and United States v. McCaskey, 9 F.3d 368, 378 (5th Cir.1993)). If an appellate court reverses a decision that relied on a party’s earlier position, then the risk of inconsistent court determina *1359 tions evaporates. In such circumstances, a party’s later position will remain inconsistent with its earlier position, but it will no longer contradict a court determination. Without a risk that court or agency decisions will contradict, courts should resist muzzling a party with judicial estoppel. As explained below, the risk of contradiction relevant for judicial estoppel ripens only after a party exhausts the appeals process.
The federal courts of appeals’ cases that address whether judicial estoppel applies to decisions reversed on appeal demonstrate the risk of contradiction motivating the Court in New Hampshire. The Sixth and Seventh Circuits are split on whether a decision reversed on appeal constitutes “success in a prior proceeding.” The Sixth Circuit refused to apply judicial estoppel to a party who asserted inconsistent positions in separate trials because the first trial verdict was reversed on appeal and thus did not satisfy the success requirement. Coal Res., Inc. v. Gulf & Western Indus., Inc., 865 F.2d 761, 773 (6th Cir.1989) (citing Edwards, 690 F.2d at 598). In contrast, the Seventh Circuit held that a court can apply judicial estoppel when an appellate court has reversed a court determination that relied on a party’s earlier position and that same party takes a position inconsistent with its earlier position in a subsequent case. Carnegie v. Household Int’l, Inc., 376 F.3d 656, 659-60 (7th Cir.2004); see also U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 597 (Fed.Cir.1995) (applying judicial estoppel under Seventh Circuit law to a party who took a position in the first case when that case was reversed on different grounds and who took an inconsistent position in a subsequent case). But see McNamara v. City of Chicago, 138 F.3d 1219, 1225 (7th Cir.1998) (suggesting that judicial estoppel does not apply to a party who abandoned a position on appeal that it successfully litigated below because the party did not obtain a favorable judgment on the basis of its position).
The Sixth Circuit’s interpretation of “success” better informs this court on how to apply judicial estoppel to a party when the case adopting the party’s earlier position is pending appeal. According to the Sixth Circuit, a decision adopting a party’s earlier position, but that is overturned on appeal, does not impugn the integrity of the judicial process because there is no longer a risk of inconsistent court determinations. See Coal Res., 865 F.2d at 773 (“We reject [appellant’s] judicial estoppel argument because [appellee] was not successful in the prior trial. Its verdict was reversed on appeal.”). Although the Sixth Circuit briefly addressed the issue, its conclusion better serves the purpose of judicial estoppel. Without a risk of inconsistent court decisions, judicial estoppel ceases to serve its purpose. Of course, there is still a risk of inconsistent court determinations and judicial estoppel may be appropriate if the appellate court reverses on an issue that does not implicate the party’s earlier position. But as the Sixth Circuit’s opinion implies, judicial estoppel should not apply when the appellate court reverses on an issue that directly relates to the earlier position.
Similarly, a party who has persuaded a lower court or agency to adopt its earlier position has not yet successfully persuaded a court to accept its position if an appeal is pending that directly relates to the party’s earlier position. To be sure, any two courts that consider the same issue could reach inconsistent results when the same party advocates differing positions. But if the mere potential of inconsistent results triggered judicial estoppel, then success would not matter at all. The better view is that the risk of inconsistent court determinations materializes only when the party *1360 is ultimately successful in persuading a court, including the appeal. When an appeal is pending, there is a possibility that the appellate court’s decision will be consistent with the party’s later position.
The consequences of a potential reversal on appeal in this case demonstrate why the Sixth Circuit’s interpretation of “success” is more likely the type of “success” that the Court considered in New Hampshire. If CIT reverses Commerce, holding that the effective date of revocation is October 1, 1995, and this court estops NART from arguing that the revocation should be effective on that same date, then NART will be estopped from taking a position consistent with CIT’s holding — even though there will be no risk that NART’s later position would lead to inconsistent court decisions. This possibility demonstrates why estopping NART here does not further the purpose of judicial estoppel because “[ajbsent success in a prior proceeding, a party’s later inconsistent position introduces no ‘risk of inconsistent court determinations,’ and thus poses little threat to judicial integrity.” New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808 (quoting C.I.T. Constr. Inc., 944 F.2d at 259).
In this case, the second changed circumstances review would be moot if CIT reverses. But another foreign market participant could revive the issue of the revocation order’s effective date by requesting a subsequent changed circumstances review. In such a review, NART could not take a position consistent with CIT’s reversal if we applied judicial estop-pel and CIT reversed.
Finally, the court should not apply judicial estoppel while an appeal is pending here because doing so creates tension with this court’s holding in Biomedical Patent Management Corp. v. California, Department of Health Services, 505 F.3d 1328 (Fed.Cir.2007). This tension is apparent when one compares the Seventh Circuit’s decision in Carnegie to Biomedical Patent Management Corp. In Carnegie, the Seventh Circuit explained that the purpose of judicial estoppel supported applying the doctrine to a party who successfully persuaded one court of its position even when that decision was reversed on appeal. 376 F.3d at 660. According to the Seventh Circuit, the purpose of judicial estoppel is to deter parties from committing perjury or defrauding the court. Id. A repeat litigant will have less incentive to commit perjury or defraud the court if the litigant must maintain its position and accept the consequences in later cases. Id. To be sure, “[t]he purpose of [judicial estoppel] is to ‘protect the integrity of the judicial process,’ by ‘preventing] parties from playing fast and loose with the courts to suit the exigencies of self interest.’ ” In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir.1999) (quoting Brandon v. Interfirst Corp., 858 F.2d 266, 268 (5th Cir.1988)). While the Seventh Circuit may be correct about deterring fraud, its rule appears to require a party to maintain a losing position in subsequent cases after it loses on appeal. Such a rule would run counter to Biomedical Patent Management Corp. In that case, this court held that an intervening Supreme Court decision on sovereign immunity excused the California Department of Health Services’ inconsistent positions. See Biomedical Patent Management Corp., 505 F.3d at 1342. In other words, we held that judicial estoppel was inappropriate when a party changes positions to reflect a change in the law. Id. Judicial estoppel should not be applied differently to a litigant who was a party in the law-changing appeal. At least when the party asserts inconsistent legal positions — as opposed to factual positions — it would be unfair to require a litigant who is party in the law-changing case to maintain *1361 a losing legal position in subsequent litigation. The same should be true of a party that changes positions when an appeal is pending.
I recognize that this ease may be a particularly attractive candidate in which to apply judicial estoppel. NART’s inconsistent positions strongly suggest that it was either misrepresenting facts during the first changed circumstances review or the second. Moreover, Heveafil’s chances of success on appeal may be minimal. If CIT affirms Commerce, this court should estop NART from arguing in favor of a different effective date. But ignoring the possibility that this ease or another similarly situated could be reversed on appeal makes this case an “example of the adage that ‘bad facts make bad law.’ ” Haig v. Agee, 453 U.S. 280, 319, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (Brennan, J., dissenting). Therefore, I respectfully dissent and would affirm CIT’s order directing Commerce to initiate a changed circumstances review.